THE NATIONAL CITY BANK OF NEW YORK, Plaintiff and Appellee, *v.* J. MARTÍNEZ LLONÍN, Defendant and Appellant.

No. 4824. Argued December 20, 1929.—Decided June 20, 1930.

*H. Torres Solá* and *Manuel Tous Soto* for appellant. *Hartzell, Kelley & Hartzell* and *R. O. Fernández* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

The following facts appear from the amended complaint herein:

That the defendants J. Martínez Llonín, Rafael Vázquez, Julio R. Bruno, and Bruno & Vázquez, jointly and severally subscribed and delivered to the plaintiff on April 27, 1923, a promissory note for the sum of $7,730.75, with interest thereon at the rate of 9 per cent per annum, for value received and payable two months after that date; that the said promissory note is now held by the plaintiff bank, to which up to August, 1923, there has been paid only $999.40; that the note is past due and the debtors, from whom payment has been demanded, have not paid to the plaintiff the balance thereof remaining unpaid and amounting to $6,731.35, either wholly or partially. The note, which appears to have been subscribed jointly and severally by J. Martínez Llonín, Julio R. Bruno, Rafael Vázquez, and Bruno & Vázquez, was attached to the complaint.

In his answer José Martínez Llonín admitted having signed, together with Vázquez, Bruno, and Bruno & Vázquez, the promissory note payable in two months after date

164

and exhibited with the complaint, but he denied that the said note had been subscribed and delivered for value received or for any consideration beneficial to him; he admitted the payment of $999.40 and alleged that that sum was paid by Antonio Ribot. He alleged as new matter that on April 27, 1923, the partnership Bruno & Vázquez was indebted to the plaintiff in the following amounts: $2,731.35 in a promissory note secured by Rafael Vázquez, Julio R. Bruno, and F. Benítez Rexach; $1,300 in another note secured by Julio R. Bruno, Rafael Vázquez, and Amalia C. de Blondet; $3,000 in another note secured by Julio R. Bruno and Emma Blondet de Montilla, and $999.40 secured by Antonio Ribot, all of which represented loans made by the National City Bank to Bruno & Vázquez; that on April 27, 1923, Bruno & Vázquez applied to the bank for an extension of time to pay those notes; that the extension was granted subject to the condition that additional security be furnished and that José Martínez Llonín, who consented to become a guarantor, called on the bank and informed the manager that he had come to subscribe the obligation and that the manager filled in the blank spaces in a document printed in English, of which language the defendant was ignorant, and that the latter subscribed the said document upon the understanding that he had become a guarantor of the notes of Bruno & Vázquez in the event that the sureties appearing therein failed to make payment; that Mr. Ribot paid to the plaintiff the sum of $999.40, which was the amount of the note secured by him; that the National City Bank of New York had failed to demand payment from the sureties who subscribed the said notes and had not exhausted their property. He filed a cross-complaint, in which he alleged the same facts set up in his special defense and, in addition, that the document subscribed by him turned out to be the promissory note for $7,730.75, upon which there appear as debtors *in solidum*, for value received, Rafael Vázquez, Julio R. Bruno, Bruno & Vázquez and the counter-plaintiff, who has never received

any sum or become a surety bound *in solidum* or a co-debtor under the said note, and that it was so admitted by the counter-defendant bank; that the said instrument does not set out the real agreement between the bank, Bruno & Vázquez, Rafael Vázquez, Julio R. Bruno and the counter-plaintiff, as understood by the bank.

After a trial of the case was had and the evidence therein heard, the court found against the defendants, who were adjudged to pay to the plaintiff the sum of $6,731.35 and interest thereon at 9 per cent, with costs and attorney's fees. That decision was thereafter amended—because of the existence of another judgment previously rendered against Julio R. Bruno, Rafael Vázquez, and Bruno & Vázquez—so as to adjudge José Martínez Llonín to make the said payment. It appears that the said prior judgment was a default judgment.

An appeal has been taken by the defendant, Martínez Llonín, who assigned five errors.

The first assignment is formulated thus:

"*First.*—In erroneously constructing the contract, entered into between the National City Bank of New York and Mr. José Martínez Llonín and which gave rise to the execution of the promissory note sued on, so as to incorporate in the agreement different obligations from those for which the appellant bound himself."

Under this assignment, the provisions of the Civil Code regulating the construction of contracts are discussed in the brief.

We have examined the evidence. There is before us a document in form a promissory note, subscribed jointly and severally by Rafael Vázquez, Julio R. Bruno, Bruno & Vázquez, and J. Martínez Llonín. We have read the testimony of Mr. Clark from which we do not get the impressions nor draw the conclusions claimed by the appellant in his brief. The explanation given by him of the facts is simple and logical. The firm of Bruno & Vázquez had subscribed several notes in favor of the bank, one of them

guaranteed by Amalia C. de Blondet, another by A. Ribot, another by Emma B. de Montilla, and another by F. Benítez Rexach. Said notes became due and the extensions thereof had expired, whereupon J. Martínez Llonín called on the bank and offered to become surety on the notes. The bank promised the debtors to accept the guaranty of J. Martínez Llonín provided a new note was subscribed by him, together with Bruno & Vázquez, Julio R. Bruno, and Rafael Vázquez, the bank to retain the old notes. It agreed, in the event the old notes were paid, to deduct the amount thereof from the amount of the new note and to return the old notes to the parties who paid them. This, in our judgment, was the agreement made, as shown by the evidence.

We will not consider, of course, the allegation that the appellant was ignorant of the nature of the instrument subscribed by him because it was in the English language. This was originally claimed but it is not insisted upon now. No business man in Puerto Rico can validly make such a claim.

The following is taken from the appellant's brief:

"The outcome of that agreement was the execution of a promissory note for value received, which jointly and severally bound its makers to pay a sum on a certain day."

It then mentions that the testimony of the manager shows plainly a discrepancy between the words and the intention of the parties to the transaction. We do not see any discrepancy, and we do not see it because there is none.

This is not a case calling for the application of the rules of construction of contracts. Such rules are applicable in case of ambiguity, either in the words or in the acts of the contracting parties. In the present case, however, not even the recognized argumentative ability of counsel for the appellant can create such a doubt. A clear and definite agreement was entered into, just as Mr. Clark proposed, and the appellant, consenting thereto, signed the document.

The theory of the appellant seems to be stated at the end of his argument under the said assignment as follows:

"The defendant, faithful to the pledge given and conscious of his duties and obligations, is not trying to evade the consequences thereof, and for this reason he confines himself to the claim that he is surety for the subscribers of the original notes and is ready to fulfill his obligations as such surety when the same should arise."

We can not accept that theory, which does not conform either to the facts or to the law. We do not deny that a surety obligation may be contracted subsequent to the principal obligation. This might possibly happen, although it is not probable. Ordinarily suretyship is contemporaneous with the main obligation. In order to admit that a mere contract of surety is involved in the present case, we would have to disregard the explicit terms of the instrument which evidence a loan, with joint and several debtors, and this would be going too far in the case of business men who know what they sign and what they bind themselves to do.

Let us consider the conditions under which this obligation might become one of suretyship with respect to the signers of the prior notes.

The instrument itself does not support the contention which we are considering. It makes no mention of the said prior notes and obligations.

The testimony introduced at the trial, even interpreted as the appellant does, stretching to the limit not the statements of the witnesses but the inferences drawn therefrom by him, does not show, by any means, the existence of the relation of surety and debtor between Martínez Llonín and F. Benítez Rexach, Amalia C. dé Blondet and the other parties who appear as principal debtors in those instruments. The contract of surety, which is multilateral in itself, gives rise to several and independent relations, such as those between the surety and the debtor, between the cosureties themselves, and between the surety and the creditor in the principal obligation. Those relations create rights and obliga-

tions and can not arise except from the consent of the parties, which is the moral foundation of the contract. We ask our-selves, where is the consent of those who subscribed the former notes and where is that of the bank, consistently and firmly denied by Clark in his testimony.

Section 1728 of our Civil Code begins thus:

"Security is not presumed; it must be express and can not be extended further than that specified therein." *

It would be superfluous to cite authorities in connection with such a clear precept, which is rooted in our historical system of jurisprudence.

Commenting on section 1827 of the Spanish Civil Code, which is equivalent to section 1728 of our Civil Code, Manresa says:

"Accordingly, although suretyship is a subsidiary obligation, it is none the less a special obligation, distinct from that of the prin-cipal debtor, which presupposes and requires, therefore, the inten-tion on the part of the surety to perform, upon the default of such debtor, that which the latter was in duty bound to do; and this requirement is so essential that, if the will of the surety is lacking, there is also a lack of consent which is the only thing that can give life to the legal nexus involved in the contract of surety."

Further on he says:

" . . . what the law has meant to provide is that suretyship must be expressly constituted and that the intention and the will of the parties to bind themselves must appear in a direct and uncertain manner . . . "

See Manresa "Commentaries on the Spanish Civil Code" (3rd. ed.), vol. 12, pp. 233–234.

In the Spanish jurisprudence we find the judgment of the Supreme Court of Spain of November 16, 1900, in an action between Santiago Cante and José Ibarra, where it

---

* NOTE.—It is believed that a more adequate translation of the excerpt above quoted would be as follows: "Suretyship shall not be presumed; it must be express and can not be extended beyond its specified limits." See F. C. Fisher, "The Civil Code of Spain" (1918 ed.), p. 316 (Art. 1827).

was held that it was a principle of law, expressly sanctioned by section 1827 of the Civil Code, that suretyship is not presumed but must be express.

It would be interesting to determine how, under the terms of the said instruments, the obligation now sought to be attributed to Martínez Llonín as an alleged surety would be enforced.

But, in any event, whether or not he is a surety, Martínez Llonín appears to have signed the note in question, jointly and severally.

We have no doubt of the existence of a consideration for the note. The consideration of a contract is not always money, a profit, or a material benefit. Section 1241 of our Civil Code, which is perhaps a little didactic as a legal precept, says:

"In contracts, involving a valuable consideration, the prestation or promise of a thing or services by the other party is understood as a consideration for each contracting party; in remuneratory contracts, the service or benefits remunerated, and in those of pure beneficence the mere liberality of the benefactor."

The consideration is of the essence of the contract; if the latter is onerous, the performance, service or promise—the consideration—is onerous also; if remuneratory, the consideration is the service or benefit remunerated; and if of pure beneficence, liberality is the consideration. And we think it of interest to consider the nature of suretyship—the only protection in many contracts—in order to determine the existence of a consideration in many cases.

In *Cintrón & Aboy* v. *Solá*, 22 P.R.R. 245, 250, this court said:

" . . . That Celestino Solá did not profit by the loan is immaterial; he agreed to be a solidary debtor in order to accommodate Solá & Son and that agreement was expressed in the promissory note when the defendant signed it as solidary debtor. The law of the contract was established in the note as the last expression of the intention of the parties and Celestino Solá must submit to it."

In *Crédito y Ahorro Ponceño* v. *Beiró*, 32 P.R.R. 752, the doctrine which formed the basis of the decision was that a person who agrees to and does sign an obligation as co-debtor *in.solidum* can not escape liability by alleging and proving that it was another co-debtor who profited by the loan.

We hold that the first assignment of error is without merit.

By the second assignment the appellant urges that the lower court misapplied the theory of novation, inasmuch as it held as extinguished the notes which preceded the one sued on herein, whereas such a novation has not been relied upon by the parties and the new promissory note is not inconsistent with the prior instruments.

We have carefully examined both the opinion and the judgment rendered by the trial court in this case, but we have not found in either document any reference to novation or anything relating to such theory. .

There is no justification for this court to consider and determine a question.which, neither from the terms nor the effect of the opinion or judgment under review, it can be said to have formed a part or ground thereof. The Court has the power to examine the whole case, even in its minute details; but that power is to be exercised, either of its own motion on grounds deemed reasonable by the Court or because one of the parties, acting on well-founded reasons, calls its attention to such question.

We fail to see how the novation theory had any influence upon the decision appealed from. The lower court gave credence to the testimony of Clark as to how the transaction in question was negotiated, and this constituted the strongest ground for its judgment; but we do not find that it dealt with the question of novation, either directly or indirectly.

The third error assigned is that the trial judge erroneously applied the doctrine laid down by this court in *Cintrón & Aboy* v. *Solá, supra,* and *Rovira* v. *Vidal (sic),* as

well as the legal precept that no one can be allowed to repudiate his own acts, and similarly section 101 of the Law of Evidence.

The appellant maintains that he took no part in the four promissory notes executed prior to that on which he is sued, and that no one has received any money or other property from the National City Bank by virtue of the latter instrument.

That would be no obstacle to the existence of a consideration for the note subscribed by the appellant. Such a consideration would be, if not the receipt by the appellant or by the other subscribers of any cash or property, at least the receipt by said subscribers of the benefit of an extension of credit which enabled them for the moment to solve a pressing situation. We confirm what we have already said regarding the consideration in contracts and its various forms. And to the decisions heretofore cited we add now, copying the citations from the appellee's brief, *Bennett* v. *Boschetti,* 31 P.R.R. 809; *Banco Comercial* v. *Arguinzonis,* 35 P.R.R. 260, and *Roig Commercial Bank* v. *Valladares,* 38 P.R.R. 393. In the first of these cases it was said:

"The defendant has the erroneous idea that because he received no benefit there was no consideration for the contract, but as appellee shows, any detriment to the opposite party is a valuable consideration. Civil Code, 1241; 13 C. J. 311."

In *Roig Commercial Bank, supra,* it was declared:

"The only substantial defense, if it may be so called, was that the principal defendant received no benefit from the loan and never authorized her husband as attorney in fact to make it. The court sufficiently answered this contention by a citation from Commercial Bank v. Arguinzonis, 35 P.R.R. 260."

There is no analogy between the case at bar and that of *González* v. *Fumero,* 38 P.R.R. 497. The action involved in the latter case was one for the cancellation of a contract. We do not see in the present case how nullity could be alleged,

since the defendant maintains, among others, the theory that he is a surety with the right of discussion (*excusión*), etc.

It appears from the record (Tr. of Ev., pp. 28–31) that the defendant presented at the trial a motion to dismiss the complaint on the ground that the plaintiff had failed to prove the averments thereof, inasmuch as it was alleged in the complaint that he had received $7,000, whereas it appeared from the evidence that he had not received anything. The plaintiff claimed that the defendant had subscribed the note as a debtor *in solidum* and that the transaction had been made at his request. The court denied the motion based on the doctrine laid down by our decision in *Cintrón & Aboy* v. *Solá, supra*. The court said:

"The question submitted is simply one regarding the subscribers *in solidum* of a promissory note. The note herein, which is signed by one of the defendants, contains the words, 'for value received', and states the amount. It has been held by the Supreme Court of Puerto Rico in the cases of Cintrón & Aboy v. Solá, Rovira v. Vivaldi (*sic*) and many others, that once a person has subscribed a promissory note *in solidum* he is precluded from claiming that he has not received that which he has acknowledged to have received in that instrument. The same question has, moreover, been submitted to me on other occasions, while acting as a judge of this court, and the theory applied by me has been that of estoppel. That is, a person who subscribes a promissory note in which he states that he has received a certain sum of money is estopped to come into court and deny that he has received such a sum, unless fraud or some other circumstance of a like nature is alleged. For that reason the motion for dismissal filed by the defendant is hereby denied."

We are not sure that the trial judge did not say more than was required, and that this has given rise to the contention now being made. In any event, the motion was sufficiently answered by the decisions in *Cintrón & Aboy* v. *Solá, supra,* and *Crédito y Ahorro Ponceño* v. *Beiró, supra.*

As to the estoppel, we are of the opinion that one who, as a debtor *in solidum,* subscribes an instrument upon which

the creditor relies and acts accordingly is precluded from denying liability as such debtor.

The foregoing reasoning is also applicable for a determination of the fourth and fifth assignments of error, which refer to the alleged nonexistence of the contract for want of consideration and to the controvertible nature of the presumption of truth (as between the parties) of the facts set forth in a written instrument. These assignments are also without merit.

The judgment appealed from must be affirmed.